STROUD, Judge.
 

 *333
 
 Defendant, former wife, appeals several judgments, a preliminary injunction, and orders regarding her divorce and alimony obligations to plaintiff, her former husband. For the following reasons, we affirm in part and reverse and remand in part.
 

 I. Background
 

 This incredibly complex case, with a record, a supplemental record, and transcripts totaling over 3,500 pages, arises from a very short marriage. Unfortunately, this case is not the only litigation spawned by the two parties, as defendant ("wife") has also filed a separate tort action against plaintiff ("husband") in Superior Court, Wake County and brought both criminal charges and a civil action against him in India. Perhaps it goes without saying that the parties agree on very little, but it is undisputed that the parties met through an Indian marriage website, began communicating in June of 2007, and were married in India on 19 October 2007. Sometime in 2008 they separated, though the exact date of separation is disputed.
 

 The issues relevant to this appeal arise from husband's divorce and alimony claim against wife. On 24 October 2011, husband filed a complaint in Wake County seeking an absolute divorce, alimony, and attorney fees. On 3 February 2012, wife filed "MOTIONS AND ANSWER" in which she moved to dismiss husband's claims based upon subject matter jurisdiction and failure to state a claim upon which relief could be granted, arguing that the parties were no longer married due to an annulment in November of 2011 in India. Wife also raised various affirmative defenses, including the annulment; constructive and actual abandonment; "physical[ ], sexual[ ] and psychological[ ] abuse[ ] ... [due to] cruel and barbarous treatment endangering her life and well being [;]" "indignities to [wife] as to render her condition intolerable and her life burdensome[;]" a lie that "induce[d] her into entering" the marriage; "fraudulent[ ] induce[ment] ... in order to gain entry into the United States and to procure immigration through her[;]" and "fraud and unclean hands ... for alimony" purposes. From this point forward, we will outline the chronology of this case by reviewing the judgments, preliminary injunction, and orders on appeal.
 

 *334
 
 A. Preliminary Injunction
 

 On 4 December 2012, the trial court issued a "TEMPORARY RESTRAINING ORDER" ("TRO") on behalf of husband due to (1) ongoing disputes between the parties regarding discovery, particularly wife's failure to turn over electronic devices such as computers and flash drives, and (2) wife's "pursuing false criminal charges against [husband] in India, having [husband's] family members arrested," ... "attempt[ing] to have [husband's] medical license revoked [,] "effort to interfere with [husband's] immigration status[,]" and "false police reports to the Morrisville Police Department[,]" which ultimately culminated in husband being arrested by Immigration and Custom Enforcement
 

 and held for 21 days as a result of [wife's] interference and lies. [Husband's] passport has been impounded as a result of her lies and he was placed on Interpol's Most Wanted because of her lies which he has only recently been able to rectify after substantial work and attorneys' fees.
 

 The TRO ordered wife to immediately
 

 surrender ... all computers, laptops, sim cards, flash drives, cd drives, hard drives and other modes of electronic storage equipment, in [wife's] possession, custody or control or that [wife]
 

 *784
 
 used at any time between August 200[ ]
 
 [1]
 
 to the present ... by 5:00 pm on Wednesday, December 5, 2012.
 

 2. [Wife] is to immediately cease any harassment (as defined by NCGS § 14-277.3A(b)(2) ) or interference with [husband] or his family, including but not limited to contacting the State Department, Department of Homeland Security, Immigration Services, any Congressman's office, any governmental agency in India regarding [husband]. [Wife] is also prohibited from submitting any further documentation to any Indian official without a court order allowing her to do so. This prohibition applies to both direct and indirect harassment and interference. [Wife] is to tell any person acting on her behalf to stop all such contact.
 

 The TRO set "[t]his matter" for hearing on 13 December 2012.
 

 *335
 
 As set by the TRO, on 13 December 2012, the trial court held the hearing, and on 3 January 2013, based on the 13 December 2012 hearing, the trial court entered a Preliminary Injunction. The Preliminary Injunction included extensive findings of fact regarding the inception of the parties' relationship, the relationship's demise, wife's efforts to have husband arrested and deported, the ensuing litigation outside of this case, and wife's repeated refusals to comply with discovery requests and orders.
 
 [2]
 

 Despite the title of the order, it was not a Preliminary Injunction in the usual sense of the term since it mainly addressed discovery issues.
 
 See
 

 Jeffrey R. Kennedy, D.D.S. v. Kennedy,
 

 160 N.C.App. 1
 
 , 8,
 
 584 S.E.2d 328
 
 , 333 (2003), ("A preliminary injunction is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show likelihood of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation." (citation and quotation marks omitted)). Essentially, the Preliminary Injunction addressed wife's noncompliance with the discovery process; in other words, had wife complied with discovery requests and orders, no preliminary injunction would have been needed. The Preliminary Injunction required wife to preserve her "electronic devices ..., including but not limited to cellular phones, smart phones, laptops, computers, storage devices such as flash drives or external hard drives, table[t]s, disks, etc. [,]" "provide her email addresses and passwords[,]" to Mr. Ellington, an expert in computer forensics and analysis, and "[b]y December 20, 2012, ... submit an affidavit ... detail[ing] ... any [and] all communication that [wife] has had with any governmental agency that may directly or indirectly impact [husband]."
 
 [3]
 
 The Preliminary Injunction set another hearing on 3 January 2013 for consideration of "remaining discovery issues [and] any issues regarding the implementation of this order."
 

 B. Judgment for Absolute Divorce
 

 On 11 December 2012, exactly one week after the TRO was entered and two days before the hearing which would result in the Preliminary
 
 *336
 
 Injunction, the trial court entered a "JUDGMENT FOR ABSOLUTE DIVORCE [.]" On 4 January 2013, the trial court entered an "AMENDED JUDGMENT FOR ABSOLUTE DIVORCE" ("Divorce Judgment") to correct a "typographical error [.]" The Divorce Judgment noted that wife "withdrew her motion to dismiss for lack of subject matter jurisdiction based on lack of domicile of either party and proceeded with her Rule 12(b)(6) claim asserting the affirmative defense of an Indian annulment."
 
 *785
 
 The trial court made several findings of fact, including the following which are relevant to the issues raised on appeal:
 

 5. .... This court declines to recognize the Indian annulment decree under the principles of comity in that the petition was filed at a time when neither [husband] nor [wife] was a domiciliary of India....
 

 6. The parties were married on October 19, 2007. Plaintiff left the marital residence on February 9, 2008 when Defendant asked him to leave. The parties worked on reconciling the marriage for sometime. Defendant made the decision to remain separate and apart from Plaintiff beginning in September 2008. The parties have in fact remained separate and apart since September 2008.
 

 C. Order for Sanctions and Injunction
 

 As set by the Preliminary Injunction, on 3 January 2013, the same day the Preliminary Injunction was entered, the trial court held a hearing regarding "[husband's] request for an injunction and for sanctions related to spoliation of evidence and non-production of discovery[;]" on 22 May 2013, the trial court entered the resulting "ORDER FOR SANCTIONS AND INJUNCTION" ("Sanctions Order"). The Sanctions Order has extensive findings of fact, including findings of fact regarding the contents of wife's provided electronic devices, her continued failure to fully comply with the prior orders regarding discovery, and her extensive interference in husband's life. The trial court concluded that wife had no "legal merit" in her objections regarding discovery compliance and that there was "no just cause" for wife's failure to comply with discovery requests. The trial court ordered:
 

 1. [Wife] is hereby precluded from presenting any evidence regarding any marital fault on the part of [husband].
 

 *337
 
 2. [Wife] is hereby precluded from providing any testimony that is not solicited by [husband's] attorney regarding any contact or communication with any third party or third party agency regarding [husband].
 

 3. [Wife] is hereby precluded from presenting any evidence regarding [husband's] earning capacity. [Wife] may only present evidence regarding [husband's] financial need for alimony.
 

 4. [Wife] may not solicit testimony from any witness that she has not fully disclosed to [husband].
 

 It is important to note, that like the Preliminary Injunction, the "injunction" portion of the Sanctions Order addresses discovery issues. Wife was not actually "enjoined" from any activity but rather was ordered to comply with discovery and sanctioned for not having already done as ordered. The trial court also noted that "[t]he issue of attorneys' fees amount and expert fees shall be entered by separate order."
 

 D. Order for Alimony and Attorney Fees
 

 On 22 May 2013, the same date the Sanctions Order was entered, the trial court began a three-day trial on husband's alimony and attorney's fee claim; on 26 August 2013, the trial court entered the resulting "ORDER FOR ALIMONY AND ATTORNEYS' FEES" ("Alimony Order"). The Alimony Order has 16 single-spaced pages with extensive findings of fact and conclusions of law. Ultimately, on 26 August 2013, the trial court entered an order requiring wife to pay alimony to husband in the amount of $1,600 per month, starting 1 September 2013 and continuing until 30 August 2016 and to pay additional attorney fees to husband's counsel in the amount of $40,000.
 

 E. Order for Attorney Fees
 

 On 3 June 2013, the trial court entered an "ORDER FOR ATTORNEYS' FEES" ("Fees Order"), pursuant to its Sanctions Order in which it had informed the parties it would be entering an order at a later time. The Fees Order required wife to pay $20,000 to husband's counsel and $2,500.00 to "Mr. Ellington for the forensic evaluations and court testimony[.]" Wife filed a notice of appeal from most of the aforementioned orders and judgments, even if interlocutory, on 25 September 2013.
 

 *338
 

 *786
 
 II. Divorce Judgment
 

 "We made a mess of it."
 
 [4]
 

 To understand wife's first argument on appeal we must turn back from the Amended Divorce Judgment to the Divorce Judgment as originally entered. The introductory paragraph in the original Divorce Judgment stated that
 

 [t]he parties, through counsel, presented evidence during Defendant's motion to dismiss, thus converting the motion to dismiss to a summary judgment hearing. The court having heard testimony of the parties, examined various exhibits and examined extensive case law finds that no genuine issue of material fact exists and that [husband] is entitled to summary judgment divorce for the following reasons[.]
 
 [5]
 

 On 28 November 2012, the trial court held a testimonial hearing to address wife's two motions to dismiss and husband's divorce claim. Wife first proceeded on her motions to dismiss for lack of subject matter jurisdiction and failure to state a claim; both these arguments, according to wife, were based on the annulment of the parties' marriage issued by a court in India.
 
 [6]
 
 In order to address the jurisdictional issues, the parties presented testimony and other evidence. Since hearings on motions to dismiss under Rule 12(b)(6) typically do not include testimony, this put the case in an interesting procedural posture because the testimony and exhibits the trial court was considering for the jurisdictional motion should not have been considered for the Rule 12(b)(6) motion.
 
 See
 

 Hillsboro Partners v. City of Fayetteville,
 

 226 N.C.App. 30
 
 , 32-33,
 
 738 S.E.2d 819
 
 , 822 ("As a general proposition, a trial court's consideration of a motion brought under Rule 12(b)(6) is limited to examining the legal
 
 *339
 
 sufficiency of the allegations contained within the four corners of the complaint."),
 
 disc. review denied,
 

 367 N.C. 236
 
 ,
 
 748 S.E.2d 544
 
 (2013).
 

 Husband testified first, followed by wife. During wife's examination, the trial court made it clear that the annulment in India was not really a jurisdictional issue and addressed the procedural quagmire:
 

 There's a first motion to dismiss, lack of subject matter jurisdiction because parties are no longer married.
 

 That's what it says, which is not subject matter jurisdiction.
 

 The second motion to dismiss is it doesn't state a claim upon which relief can be granted.
 

 MS. CONNELL [Wife's Counsel]: Correct. I will concede that the first motion to dismiss for lack of subject matter jurisdiction raised there is inappropriate.
 

 THE COURT: OK. Again, remember on a motion to dismiss is you look at the four corners of the document.
 

 You don't rely on other information. And I don't know what's in the document, itself.
 

 But that's why I don't understand why we're having all this testimony on the issue of dismissal, 12(b)6.
 

 I'm looking at the complaint.
 

 MS. SANDLIN [Husband's Counsel]: Your Honor, I think it can be turned into a summary judgment.
 

 THE COURT: It can be turned into a summary judgment motion because that's basically what we're going to do, is summary judgment on that issue.
 

 If you bring in extraneous information, the Court can allow it and it would be
 
 *787
 
 treated as a motion for summary judgment.
 

 MS. CONNELL: I believe that's where we are at this point, Your Honor.
 

 THE COURT: Yeah. I am a big nitpicker on civil procedure. I wish someone had filed a motion for summary judgment instead of-and we'll proceed on that as we go.
 

 Y'all work out the documents.
 

 *340
 
 MS. CONNELL: And just to clarify what I was going to say, the 12 (b)6, now summary judgment, and then our contention is that the subject matter jurisdiction fails because no one was a domiciliary-
 

 THE COURT: (Interposing) Well, you just got through telling me you're not-I'm talking only about the motions to dismiss right now.
 

 MS. CONNELL: I apologize. I'm jumping ahead.
 

 THE COURT: I'm only talking about the motions to dismiss.
 

 MS. CONNELL: OK.
 

 THE COURT: You've already told me that you're not doing the motion to dismiss alleged in the complaint.
 

 MS. CONNELL: Yes, ma'am.
 

 THE COURT: And you haven't filed another motion to dismiss the complaint based on anything else other than the two asserted in your answer?
 

 MS. CONNELL: Yes, ma'am.
 

 THE COURT: So I'm only talking about the motions to dismiss right now....
 

 After the lunch recess, the trial court resumed by clarifying:
 

 Folks, just to kind of carry on the discussion we had before we left, I do believe that this is being converted to a motion for summary judgment, which everyone realizes that even though it's [wife's] motion, I can grant summary motion in favor of the [husband] at the conclusion of this.
 

 Whereas, if it were just a motion to dismiss, that would be my only option, would be to dismiss it in its entirety.
 

 So if I were to find that there was-that the evidence regarding annulment was insufficient, that there was a valid marriage, I can grant summary judgment on the divorce claim, because that's what you've moved-you've moved to dismiss the entire complaint, but I certainly can grant summary judgment on the divorce claim.
 

 *341
 
 Not on the alimony, because I don't think all the elements will be presented in evidence.
 

 At this point wife's attorney stated that wife would only be proceeding on the Rule 12(b)(6) motion that had been "converted" to a summary judgment motion due to the testimony and exhibits the trial court was to consider. With this background in mind, we turn to wife's argument on appeal.
 

 Wife's first argument is that "the trial court erred in making factual findings in the summary judgment proceeding which impacted the supposed duration of the marriage and subsequent alimony award." (Original in all caps.) (Quotation marks omitted.) Wife argues that the trial court improperly made findings of fact in the Divorce Judgment which created "a snowball effect" in the Alimony Order, as the trial court considered the findings of fact from the Divorce Judgment the law of the case. The focus of wife's argument is not the validity of the absolute divorce itself but instead the trial court's later reliance upon its findings of fact in the Alimony Order. Thus, we turn to the Divorce Judgment and the issues it actually intended to and did address.
 

 Although the procedural posture of the case was a "mess[,]" we can organize the mess by separately looking at each of the issues addressed by the Divorce Judgment. First, the trial court considered the motion to dismiss based upon subject matter jurisdiction. Wife chose not to pursue this motion, and there are no arguments regarding it on appeal. Secondly, the trial court considered wife's motion to dismiss based upon Rule 12(b)(6) that was "converted" to a motion for summary judgment only on the claim for absolute divorce. Ultimately, wife does not contest the basis of the trial court's denial of the motion to dismiss because it did not recognize the annulment in India. Wife has not raised any arguments that the annulment should have been recognized.
 

 *788
 
 Lastly, there was the divorce claim. North Carolina General Statute § 50-6 provides,
 

 Marriages may be dissolved and the parties thereto divorced from the bonds of matrimony on the application of either party, if and when the husband and wife have lived separate and apart for one year, and the plaintiff or defendant in the suit for divorce has resided in the State for a period of six months.
 

 N.C. Gen.Stat. § 50-6 (2011). Thus, to grant a summary judgment divorce the trial court need only find that there was no genuine issue of material
 
 *342
 
 fact that the parties had been separated for a year, although the exact date is not a necessary finding as long as the time period was a year or more, and that one of the parties had resided in North Carolina for six months preceding the filing of the complaint.
 
 See
 
 id.,
 
 see also
 
 N.C. Gen.Stat. § 1A-1, Rule 56(c) (2011) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.").
 

 Wife does not contest that the parties had been separate and apart for at least a year or that she or husband had resided in North Carolina for six months. Thus, wife does not contest the granting of husband's claim for absolute divorce. Wife does contest the trial court's reliance on the findings of fact in the Divorce Judgment when it later entered the Alimony Order. For the reasons we have just stated, we agree that findings of fact beyond not recognizing the annulment in India, that the parties had been separated and apart for a year, and that either husband or wife had resided in North Carolina for six months were not necessary for the trial court to make in the Divorce Judgment. However, because the determinations of the Divorce Judgment itself are not challenged, we affirm the Divorce Judgment. Yet this does not end our inquiry regarding the Divorce Judgment, because we must consider the extent to which the trial court wrongfully used the extraneous findings of fact in the Divorce Judgment in support of its Alimony Order. We will address this issue in our analysis of the Alimony Order.
 

 III. Preliminary Injunction
 

 "The particular marital fault that there has been testimony about in the past with regard to this case ... there are findings of fact about it in this order."
 
 [7]
 

 Wife's argument here is similar to the argument we just addressed, although more plainly stated as she contends that in the Alimony Order "[t]he trial court improperly granted conclusive and preclusive effect to the factual findings in an earlier entered preliminary injunction order." (Original in all caps.) Just as in the last section, here, wife contends that the trial court improperly relied upon findings of fact made in the Preliminary Injunction in its Alimony Order. Wife does not present any substantive challenge to the entry of the Preliminary Injunction itself.
 

 *343
 
 Thus, we affirm the Preliminary Injunction, and to the extent that the trial court relied upon findings of fact from the Preliminary Injunction in its Alimony Order, we will address this in our analysis of the Alimony Order.
 

 IV. Sanctions Order
 

 Wife makes two arguments as to the Sanctions Order, and we separately address each.
 

 A. Failure to Consider Wife's Affidavit
 

 "That's fine. I withdraw it. I'll withdraw the affidavit."
 
 [8]
 

 Wife argues that "the trial court improperly failed to consider wife's affidavit in opposition to the motion for sanctions/in limine filed against wife." (Original in all caps.) Wife contends that had the trial court considered her affidavit, it would have ruled differently regarding the Sanctions Order, but she does
 
 *789
 
 not argue any other substantive challenge to the actual Sanctions Order.
 

 Wife's argument on appeal focuses on a few limited statements made by the trial court from two separate parts of the hearing:
 

 [T]he trial court would not consider Wife's affidavit in opposition to the motions pending before the court.... The trial court said it would not consider the affidavit unless it was "presented" as "evidence." The trial court noted that Wife "[didn't] have to file a response" to the outstanding motions.... Later in the hearing, when Wife's counsel actually sought to introduce the affidavit into "evidence," the trial court refused the entry of the affidavit.
 

 But defendant's summary of what happened at the hearing takes the trial court's statements out of context; we shall seek to place them back in proper perspective.
 

 On 3 January 2013, at the beginning of the hearing, the trial court stated:
 

 We're here, I think it's called Plaintiff's Motion in Limine on my calendar. I know it was a carry-over from a previous court date with regard to some discovery sanctions.
 

 ....
 

 *344
 
 MS. SANDLIN: December 4th, Your Honor. And you signed the TRO that day and you entered a preliminary injunction following that hearing, which we had December the 13th.
 

 THE COURT: Right.
 

 MS. SANDLIN: And as part of the December 13th hearing, you ordered certain things. And that's something else that we're here about today, which is also covered in the motion in limine.
 

 And you ordered certain things to happen back in September of 2012 and you've subsequently made other orders, just re-enforcing your order from September of 2012.
 

 The other thing that is on the calendar, Your Honor, is when we were here, Ms. Connell consented for Ms. Husna for the entry and continuation of the preliminary injunction as it related to electronic devices.
 

 THE COURT: Right.
 

 Thereafter, Mr. Will Cherry, wife's new counsel, stated that he would like to hand up wife's affidavit
 

 that responds to various things that I think are going to be at issue today.
 

 THE COURT: Counsel, I'm going to tell you if you expect me to read that affidavit, it counts against your time.
 

 The trial court then thoroughly explained the "parameters" around its consideration of the affidavit. Then husband's attorney objected to the affidavit:
 

 MS. SANDLIN: Your Honor, I have some objections to the affidavit. Primarily my biggest objection is it has attached what purports to be attorney/client communication between Ms. Husna and her counsel, Ms. Connell and Ms. Tanner, which purports to explain some of her behavior.
 

 THE COURT: Are you waiving the attorney/client privilege, Counsel?
 

 *345
 
 MR. CHERRY: As the affidavit states, it is waived with respect to those-
 

 THE COURT: (Interposing) No. When you open the door, you open the door.
 

 MR. CHERRY: Your Honor, that-
 

 THE COURT: (Interposing) And it's not in evidence yet, so no door has been opened.
 

 MR. CHERRY:
 
 That's fine. I withdraw it. I'll
 
 withdraw the affidavit.
 

 (Emphasis added.)
 

 Thereafter, the trial court, to put it bluntly and colloquially, expressed its concern that wife was attempting to throw her prior attorneys "under the bus" and that this would not be allowed without hearing also from the attorneys themselves. The trial court then explained it would only consider the affidavit if it came in as evidence, and this was one of the portions of the transcript noted in wife's brief:
 

 THE COURT: So to the extent you want to move that affidavit into evidence, I haven't made any rulings on it.
 

 But just handing it up to the Court for something other than evidence I don't think is appropriate.
 

 *790
 
 At the point you want to present it as evidence, well, you can certainly jump through the evidentiary hoops and try to get it in.
 

 MR. CHERRY:
 
 For the time being, I think we'll address the matters through Defendant's testimony.
 

 (Emphasis added.)
 

 Turning to the second portion of the transcript noted in wife's brief, later in the hearing, wife did testify on direct with husband's counsel, and part of this testimony involved a lengthy and confusing discussion regarding wife's failure to properly provide discovery. During the testimony, the following exchange took place:
 

 Q. (By Ms. Sandlin) Ma'am, you attached this affidavit
 
 [9]
 
 , and you said, "This is evidence that I asked the Indian
 
 *346
 
 Police Department and the Public Prosecutor to produce the computer."
 

 Isn't that the purpose that you did this?
 

 A. Yes.
 

 ....
 

 MR. CHERRY: I would like to move this affidavit into evidence since we've been talking about it so that you can consider-
 

 THE COURT: (Interposing) The affidavit is not coming into evidence. You're going to have her on the stand. You can get it in before me. Alright?
 

 MR. CHERRY: Yes, ma'am.
 

 THE COURT:
 
 And then it can come into evidence, just to basically corroborate her testimony.
 

 (Emphasis added.) Thereafter, wife never attempted to offer the affidavit into evidence.
 

 Regardless of the merits of wife's legal arguments as to when and how an affidavit may generally be presented in opposition to a motion, a review of the entire hearing puts the issue in its proper context. Wife wanted to blame her prior attorneys for her failures to respond to discovery requests, and she sought to do this by her affidavit, without waiving her attorney-client privilege and without calling the attorneys to testify. The trial court noted that if it accepted wife's affidavit she would be waiving her attorney-client privilege. Wife chose not to waive the attorney-client privilege, and she did not challenge the trial court's interpretation of her affidavit or the trial court's stance on privilege either before the trial court or on appeal. The trial court then gave wife an opportunity to present the affidavit as evidence, but wife's counsel declined, and chose to "address the matters through Defendant's testimony."
 

 Thereafter, during wife's testimony on direct for husband's attorney, wife's counsel again asked to offer the affidavit as evidence, and the trial court explained it would accept the affidavit as evidence during wife's time "on the stand[,]" in other words, during her presentation of evidence, not during husband's case-in-chief.
 
 [10]
 
 Wife's counsel did not
 
 *347
 
 disagree with the trial court's ruling on the appropriate time for the affidavit to be admitted into evidence. And although wife did present evidence during her case in chief, she did not proffer the affidavit again.
 

 The affidavit was not admitted into evidence because wife's attorney made the strategic decision not to offer it. Perhaps this decision was based upon attorney-client privilege, or because he believed that wife's testimony was sufficient, or a myriad of other possible reasons, but the fact remains that
 
 *791
 
 the trial court plainly stated it would accept the affidavit as evidence during wife's presentation of evidence if properly offered, and wife's attorney chose not to offer it. This argument has no merit.
 

 B. Extent of Discovery Required
 

 "So I guess to answer your question, every device that I've been given has been either misrepresented or tampered with in some way."
 
 [11]
 

 Wife next argues that "the trial court improperly sanctioned wife for failing to produce items she was under no obligation to produce." (Original in all caps.) (Quotation marks omitted.) "Our standard of review of an order imposing discovery sanctions under N.C. Gen.Stat. § 1A-1, Rule 37 is abuse of discretion."
 
 Ross v. Ross,
 

 215 N.C.App. 546
 
 , 548,
 
 715 S.E.2d 859
 
 , 861 (2011).
 

 We have already concluded that wife's affidavit was not received into evidence because she did not introduce it. Thus, to the extent that wife relies on the same affidavit as evidence of errors in the Sanctions Order, her argument is rejected. Wife's argument is hypertechnical and focused on a few words in husband's discovery requests, in which he requested discovery of "regularly used" or "primarily used" electronic devices, while, during the hearing and in the Sanctions Order, the trial court addressed "any" electronic device she has been exposed to over the course of litigation. But considering the entirety of the Sanctions Order in context, the trial court did not, as wife argues, require her to do
 
 *348
 
 the impossible by providing every single electronic device she had been exposed to, whether or not it belonged to her. Instead, the Sanctions Order quite logically addresses discovery violations such as wife's denial of use of an email address which the evidence showed she had used
 
 after
 
 the date she claimed she had last used it and tampering with devices she eventually did turn over for discovery. On appeal, wife does not actually contest a single finding of fact regarding her devious conduct during discovery nor does she challenge the propriety of the trial court's ultimate sanction which bars her from presenting certain evidence, including evidence of husband's marital fault, at the alimony hearing. Wife has failed to argue, much less demonstrate, an abuse of discretion.
 
 See
 
 id.
 

 Once again, the focus of wife's arguments regarding the Sanctions Order is the trial court's later reliance on findings from the Sanctions Order in the Alimony Order. Wife's only heading in this section of her brief is entitled, "A specific illustration of how the trial court's error in the sanction/in limine order illegally prejudiced Wife
 
 at the alimony trial.
 
 " (Emphasis added.) In fact, wife concludes her argument regarding the Sanctions Order by stating, "For that reason and others cited herein, the alimony order and the corresponding order on attorneys' fees must be vacated[,]" and does not even mention vacating, reversing, or remanding the Sanctions Order.
 

 Lastly, we note that wife filed a reply brief and argued,
 

 assuming
 
 arguendo
 
 the trial court could change the terms [to "any" device instead of "regularly" or "primarily" used devices] if wife's obligations to provide discovery responses from those of the original requests and the trial court's own order to compel, wife could not be bound by those changed terms until a written order on sanctions was issued.
 

 (Original in all caps.)
 

 The trial court rendered its decision at the hearing regarding sanctions on 3 January 2013, but did not enter the written Sanctions Order until 22 May 2013, the first day of the alimony hearing. Wife claims that since "no written order on the sanctions had been entered ... it was unclear what Wife's obligations were pending entry of such an order." Wife essentially argues that she was not aware of her discovery obligations until it was too late. Although we acknowledge that in some cases a delay in entry of an order of this sort could be problematic, as a party truly may not know what is required of her by the trial court, that did not happen here. We know this because at the alimony trial,
 
 *792
 
 which began on
 
 *349
 
 22 May 2013, the same day that the Sanctions Order was signed and filed, wife's counsel does not mention any concerns whatsoever regarding the date of entry of the Sanctions Order, despite the fact that various provisions of the order are discussed during the hearing. If wife believed that she was prejudiced by the delayed entry of the Sanctions Order and did not understand her obligations, she should have mentioned it that day, when the trial court could have addressed the issue with both parties and counsel. Wife has thereby waived any argument on appeal regarding the date of entry of the Sanctions Order.
 
 See
 
 N.C.R.App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion [.]");
 
 see also
 

 State v. Johnson,
 

 204 N.C.App. 259
 
 , 266,
 
 693 S.E.2d 711
 
 , 716-17 (2010) ("As a general rule, the failure to raise an alleged error in the trial court waives the right to raise it for the first time on appeal.") Thus, we affirm the Sanctions Order,
 
 [12]
 
 and finally turn to the crux of this entire appeal, the Alimony Order.
 

 V. Alimony Order
 

 "[I]f the Court is stuck with those findings of fact, which I think we are-we can't go back and relitigate those."
 
 [13]
 

 Finally, we turn to the Alimony Order. Wife essentially raises two arguments as to the Alimony Order, and we address each in turn.
 

 Decisions regarding the amount of alimony are left to the sound discretion of the trial judge and will not be disturbed on appeal unless there has been a manifest abuse of that discretion. When the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts.
 

 An abuse of discretion has occurred if the decision is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision.
 

 Kelly v. Kelly,
 

 228 N.C.App. 600
 
 , 600-01,
 
 747 S.E.2d 268
 
 , 272-73 (2013) (citation and quotation marks omitted).
 

 *350
 
 A. Trial Court's Reliance on Prior Orders
 

 As we have noted several times so far, most of wife's arguments regarding other judgments and orders are that the trial court improperly relied on various findings of fact in these prior judgments and orders in the Alimony Order. Indeed, the trial court made it clear at the alimony hearing that it was bound by all judgments and orders that had preceded this hearing; and as to marital fault, a main focus of the Alimony Order, the trial court stated that what had been determined about fault was "the law of the case, and it's done." Because the trial court was not actually "stuck" with all of the prior findings of fact, we must reverse and remand the Alimony Order.
 

 We consider first the trial court's reliance on findings of fact in the summary judgment Divorce Judgment. As we noted in the section regarding the Divorce Judgment, the trial court did indeed make some findings of fact, particularly finding 6, that went beyond the facts needed to address the limited issues before it.
 
 [14]
 
 Our Court has previously recognized as to findings of fact in summary judgment proceedings that "[t]he Findings of Fact entered by the trial judge, insofar as they may resolve issues as to a material fact, have no effect on this appeal and are irrelevant to our decision."
 
 Insurance Agency v. Leasing Corp.,
 

 26 N.C.App. 138
 
 , 142,
 
 215 S.E.2d 162
 
 , 165 (1975) (citations and quotation marks omitted). The unnecessary findings of fact in the Divorce Judgment should
 
 *793
 
 also have been irrelevant to the trial court when considering alimony,
 
 see generally
 
 id.,
 

 but unfortunately they were not. The irrelevant findings of fact in the Divorce Judgment include the date of separation of September 2008, as this was a contested issue. Essentially, the parties agree they ceased living together on 9 February 2008, but husband contends, and the trial court found in the Divorce Judgment, that the parties separated in September 2008, apparently based upon "defendant's" formation of the intent to remain separate and apart from "plaintiff."
 
 [15]
 

 *351
 
 Although it might be appropriate to reverse and remand the Alimony Order for this reason alone, since we have no way of knowing how much weight the trial court gave the findings of fact it relied upon from the Divorce Judgment, such as the date of separation, or if the unnecessary findings of fact had any effect on the final ruling, we will address the other issues as well in the hope of limiting and clarifying the determinations which will have to be made on remand.
 

 The findings of fact from the Preliminary Injunction were also not binding upon the trial court at the alimony hearing.
 
 See
 

 Childress v. Yadkin Cty.,
 

 186 N.C.App. 30
 
 , 43,
 
 650 S.E.2d 55
 
 , 64 (2007) (citation and quotation marks omitted). ("[F]indings and conclusions made in the grant of an injunction are not authoritative as the law of the case for any other purpose[.]") Indeed, our Supreme Court has explained the "relevant rules" regarding Preliminary Injunctions:
 

 1. The purpose of an interlocutory injunction is to preserve the status quo of the subject matter of the suit until a trial can be had on the merits....
 

 ....
 

 7.
 
 The findings of fact and other proceedings of the judge who hears the application for an interlocutory injunction are not binding on the parties at the trial on the merits.
 
 Indeed, these findings and proceedings are not proper matters for the consideration of the court or jury in passing on the issues determinable at the final hearing.
 

 Huskins v. Hospital,
 

 238 N.C. 357
 
 , 360-62,
 
 78 S.E.2d 116
 
 , 119-21 (1953) (citations omitted). Upon remand the trial court should not rely upon any of the findings of fact in the Preliminary Injunction to make findings required for husband's alimony claim, including the findings regarding marital fault.
 

 We now consider the Sanctions Order. We have already affirmed the Sanctions Order, and this order bars wife from presenting certain evidence, including any evidence of marital fault by husband. Yet, even if wife could not present evidence of marital fault by husband, the trial court was not "stuck" with all of the prior findings of fact regarding marital fault committed by wife. We also note that in the trial court's consideration of marital fault, the actual date of separation will determine whether wife's actions alleged as marital misconduct occurred during the marriage or after the date of separation. N.C. Gen.Stat. § 50-16.3A (b)(1)(2011) (determining the amount and duration of alimony requires,
 
 *352
 
 if relevant, consideration of "[t]he marital misconduct of either of the spouses. Nothing herein shall prevent a court from considering incidents of post date-of-separation marital misconduct as corroborating evidence supporting other evidence that marital misconduct occurred during the marriage and prior to date of separation [.]") Again, we have no way of knowing exactly which prior findings of fact the trial court erroneously relied upon or if the trial court might have found differently if not bound by prior findings, so we must remand the Alimony Order. Furthermore, from our review, the Sanctions Order's findings of fact addressed the issues of discovery and non-compliance with the discovery process, but they properly did not address non-relevant issues such as the date of separation and marital fault for purposes of alimony, so to
 
 *794
 
 the extent these findings could even be inferred from the Sanctions Order, they would not be binding on the claim for alimony as this claim is separate and apart from the discovery issues. But viewed within context, as an order addressing discovery issues and violations, we have affirmed the Sanctions Order, so it remains binding on remand, including its prohibition on wife's presentation of evidence of marital fault by husband.
 

 B. Judicial Notice
 

 "Her earning capacity is an ultimate fact. And to say, 'OK, I pulled this up on the website and I want you to take judicial notice that this is what she can earn,' without any further evidence about what she can earn, I would object."
 
 [16]
 

 Wife's last argument is that "the trial court erred in taking judicial notice of the Bureau of Labor Statistics concerning supposed salaries for electrical engineers, [wife's occupation,] as these statistics do not constitute undisputed adjudicative facts capable of being judicially noticed." (Original in all caps.) (Quotation marks omitted.) The trial court found:
 

 Defendant is an accomplished electrical engineer who hold several patents. She has been published more than 20 times. Defendant's area of expertise is that of semiconductor and other electrical components. The court takes judicial notice of the occupational employment statistics, occupational employment and wages for 2012 as published by the national Bureau of Labor Statistics. The national average salary for an electrical engineer
 
 *353
 
 with Defendant's qualifications is $99,540 annually. The mean salary for an electrical engineer in North Carolina is $126,000. Defendant has the ability to earn at least $99,540 annually. Defendant is capable of earning a substantial income but is choosing to not do so in order to avoid her support obligation to Plaintiff.
 

 North Carolina General Statute § 8C-1, Rule 201 of the Rules of Evidence governs judicial notice:
 

 (a) Scope of rule.-This rule governs only judicial notice of adjudicative facts.
 

 (b) Kinds of facts.-A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 

 (c) When discretionary.-A court may take judicial notice, whether requested or not.
 

 (d) When mandatory.-A court shall take judicial notice if requested by a party and supplied with the necessary information.
 

 (e) Opportunity to be heard.-In a trial court, a party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
 

 N.C. Gen Stat. § 8C-1, Rule 201 (2011).
 

 In
 
 Greer v. Greer,
 
 this Court noted:
 

 Rule 201(b) of the North Carolina Rules of Evidence specifies that a judicially noted fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned....
 

 *354
 

 Any subject, however, that is open to reasonable debate is not appropriate for judicial notice.
 

 175 N.C.App. 464
 
 , 472,
 
 624 S.E.2d 423
 
 , 428 (2006) (emphasis added) (citation, quotation marks, and brackets omitted).
 

 As part of husband's evidence regarding wife's earning capacity, his attorney asked the trial court "to take judicial notice of the
 
 *795
 
 Department of Labor Statistics with regard to salaries for electrical engineers." Wife's counsel objected, noting that "[t]his is the sort of thing that if they wanted to call in a vocational expert to talk about what she's capable of earning, then I wouldn't have any objection to it." After further discussion, husband's counsel noted that "what I'm asking you to take judicial notice of is what the average salary is for someone with her qualifications." The trial court then took judicial "notice of what she can earn[.]"
 

 According to wife's brief, her "earning capacity was highly disputed[,]" and the trial court made an unchallenged finding of fact regarding her prior earnings. The trial court found in finding of fact 13 that wife was employed by Cree Inc. at the time of the marriage and earned $58,685.00 annually. In 2008, she earned $63,783.00, and in 2009, $89,242.53. In 2010, wife's income from Cree Inc. and Nitek was $57,328.00. Wife also began pursuing her PhD and Nitek was paying her tuition, which was "substantial" and unreported on her income tax returns. In 2011, wife was paid $24,023 by Nitek, and in 2012, she was paid "about $25,000.00" and sold stock "in excess" of $17,000.00. In August of 2012, wife quit her job. Furthermore, the trial court found, and wife does not dispute, that she "is an accomplished electrical engineer who hold several patents" and "has been published more than 20 times[;]" her area of expertise is "semi-conductor and other electrical components." The trial court then found wife's earning capacity to be $99,540.00 annually, based upon the "national average salary" for an electrical engineer with wife's qualifications.
 

 Given the evidence at trial, and the trial court's own recitation of wife's varying salaries through the years, wife's earning capacity actually was and is "open to reasonable debate[.]"
 

 Id.
 

 Even if the labor statistics alone are undisputed, their applicability to wife is still open to question. Wife may contend, and apparently does, that she does not have the capacity to earn as much as the average electrical engineer with her qualifications or perhaps her capacity to earn is even greater than average, considering her patents and publications. Either way, her earning capacity is not the type of undisputed fact of which the trial court could take judicial notice under Rule 201.
 
 See
 
 id.
 

 *355
 
 Husband argues that even if the trial court erred in taking judicial notice of the statistics regarding average salaries, the error is harmless based upon the evidence of her actual earnings before quitting her job, particularly her earnings of $88,512.00 in 2009 and her stock option benefits. But wife is correct that there is no evidence to support the trial court's finding of fact as to her earning capacity of $99,540.00, and this finding was explicitly based upon the judicially noticed statistics. This amount, $99,540.00, is substantially greater than wife's earnings for most of the years addressed in finding of fact 13. We agree that the trial court erred by taking judicial notice of the statistics and relying so heavily upon these statistics for its finding of fact regarding wife's earning capacity. We have already determined that the Alimony Order must be reversed and remanded, but we address this issue so that the trial court does not make the same error upon remand in determining wife's earning capacity.
 

 VI. Conclusion
 

 In conclusion, we affirm the Divorce Judgment, Preliminary Injunction, Sanctions Order, and Attorney Fees Order. We reverse and remand only the Alimony Order. On remand, the trial court must, if wife should request to do so, permit her to present additional evidence regarding the date of separation and her intent to separate, to the extent that this evidence is not barred by the Sanctions Order. As to this issue, the parties must have the opportunity to present additional evidence since wife did not previously have the opportunity to present this evidence because of the trial court's reliance on the finding of fact as to the date of separation in the Divorce Judgment. Due to the affirmed Sanctions Order, wife still may not present evidence of marital fault by husband or any other evidence barred by the Sanctions Order. However, the trial court should make its own independent determination of marital misconduct by wife as it is not bound by any prior judicial determination. Of course, this opinion does not prevent the trial court from
 
 *796
 
 making the same findings of fact on remand, so long as the findings are based upon its independent consideration of the evidence for purposes of determining the alimony claim. Since it has been over two years since the entry of the Alimony Order, we leave it in the trial court's sole discretion as to whether the parties should be permitted to present additional evidence. It would be entirely appropriate for the trial court to enter its new order based upon the evidence that was before it in 2013, but this Court has no way of knowing the current circumstances of the parties or if the trial court would prefer to receive additional evidence prior to entering a new alimony order; so the determination of whether to permit the
 
 *356
 
 parties to present additional evidence on remand and the extent of any evidence allowed can only be made by the trial court.
 

 AFFIRMED in part; REVERSED and REMANDED in part.
 

 Judges DILLON and DAVIS concur.
 

 [1]
 

 The final digit of the year is illegible.
 

 [2]
 

 Husband had previously served various discovery requests upon wife, and the trial court had entered an order compelling discovery which is not a subject of this appeal.
 

 [3]
 

 The TRO did enjoin wife from continuing to "harass" husband and from reporting him to various agencies, but this language was not included in the decretal portion of the Preliminary Injunction.
 

 [4]
 

 Throughout this case, the parties' counsel and trial court remained keenly aware of the level of complexity and chaos involved. For this reason, the record includes comments which seem to summarize each of the issues raised on appeal, and we have quoted these as introductions to each section. We appreciate husband's counsel for her candor in this particular remark about the procedural posture of the case during the divorce hearing.
 

 [5]
 

 We recognize that this quoted portion was removed from the Amended Divorce Judgment, but as we noted, this procedural summary is helpful to understand wife's argument on appeal.
 

 [6]
 

 Wife's motion to dismiss states, "The Court lacks subject matter jurisdiction over Plaintiff's Claim for Absolute Divorce because the parties are no longer married." In a later motion for relief from order, wife raises another issue with subject matter jurisdiction regarding "residency and domiciliary[,]" claiming that she resided in South Carolina.
 

 [7]
 

 Husband's counsel made this argument to the trial court at the alimony hearing as to the effect of the findings of fact in the Preliminary Injunction.
 

 [8]
 

 This quote is from wife's counsel.
 

 [9]
 

 In context, "this affidavit" is the affidavit wife had previously attempted to hand up to the trial court and then withdrawn.
 

 [10]
 

 Black's Law Dictionary defines "case-in-chief" as "1. The evidence presented at trial by a party between the time the party calls the first witness and the time the party rests. 2. The part of a trial in which a party presents evidence to support the claim or defense." Black's Law Dictionary 244 (9th ed.2009). Normally each party offers exhibits into evidence during his or her case-in-chief and not during the opponent's case-in-chief.
 
 See generally
 
 id.
 

 Under N.C. Gen.Stat. § 8C-1, Rule 611(a), "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.C. Gen.Stat. § 8C-1, Rule 611(a) (2011).
 

 [11]
 

 This quote is from Mr. Ellington.
 

 [12]
 

 Wife does not make a separate argument regarding the Attorney Fees Order, and thus it too is affirmed.
 

 [13]
 

 This quote is from the trial court.
 

 [14]
 

 During rendition of the divorce ruling, the trial court recognized that a summary judgment divorce order should not have findings of fact: "So I'm granting summary judgment in favor of the Plaintiff on the divorce claim.... But of course, it's a summary judgment, folks, so there's not a lot of findings in there."
 

 [15]
 

 Based upon the evidence presented and the arguments on appeal, we think that perhaps this finding may also include a "typographical error" in referring to the parties. Based upon the evidence that the trial court appeared to find the most reliable, husband's evidence, it is likely the trial court actually found that
 
 husband
 
 formed his intent to remain separate and apart in September, and not that
 
 wife
 
 formed an intent then; but either way, the result is the same on appeal, since the trial court will have to make a new finding of fact on the date of separation on remand.
 

 [16]
 

 This statement is wife's counsel's objection to the trial court taking judicial notice of the labor statistics.