STROUD, Judge.
 

 *46
 
 Defendant appeals from an order imposing lifetime satellite-based monitoring ("SBM"). Although the State presented argument to the trial court regarding the risk of recidivism by sex offenders based upon various studies and statistics, the State did not provide the studies to Defendant or the trial court. The statistics noted by the State were not subject to judicial notice under Rule 201 since they are subject to reasonable dispute and they are not "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. Gen. Stat. § 8C-1, Rule 201(b) (2017). Since the State presented no evidence supporting the reasonableness of SBM as applied to Defendant, we must reverse the trial court's order for the reasons discussed in
 
 State v. Grady
 
 , --- N.C. App. ----,
 
 817 S.E.2d 18
 
 (2018) ("
 
 Grady II
 
 "), and
 
 State v. Griffin
 
 , --- N.C. App. ----,
 
 818 S.E.2d 336
 
 (2018).
 

 I. Background
 

 Defendant entered an
 
 Alford
 
 plea to attempted first-degree sex offense, habitual felon, assault on a female, communicating threats, interfering with emergency communication, first-degree kidnapping, incest, and second-degree forcible rape. Defendant's charges were consolidated into a single judgment and the trial court imposed a sentence of 216 to 320 months. On the same day judgment was entered, Defendant submitted a motion to dismiss the State's petition for SBM. The trial court held a hearing regarding SBM. The trial court denied Defendant's motion and entered an order directing Defendant to submit to lifetime SBM upon his
 
 *907
 
 release from prison. Defendant timely appealed the order requiring him to submit to lifetime SBM.
 

 II. Standard of Review
 

 "An appellate court reviews conclusions of law pertaining to a constitutional matter de novo."
 
 Grady II
 
 , --- N.C. App. at ----,
 
 817 S.E.2d at 21
 
 (quoting
 
 State v. Bowditch
 
 ,
 
 364 N.C. 335
 
 , 340,
 
 700 S.E.2d 1
 
 , 5 (2010) ).
 

 III. Evidence of Reasonableness of SBM
 

 Defendant argues "[b]ecause the State in this case failed to satisfy its burden of demonstrating that SBM was a reasonable search, the order requiring Mr. Anthony to submit to lifetime SBM must be reversed without remand to superior court." Defendant also argues that "North Carolina's SBM program is an unreasonable search that violates the Fourth Amendment."
 

 *47
 
 Once the trial court has determined that a defendant is subject to SBM under North Carolina General Statute § 14-208.40(a)(1)-(3), it must then determine the constitutionality of the search as applied to the particular defendant.
 
 Grady II
 
 , --- N.C. App. at ----,
 
 817 S.E.2d at 28
 
 ("We reiterate the continued need for individualized determinations of reasonableness at
 
 Grady
 
 [
 
 v. North Carolina,
 
 --- U.S. ----,
 
 135 S.Ct. 1368
 
 ,
 
 191 L.Ed.2d 459
 
 (2015) ] hearings."). This analysis includes two parts: the defendant's risk of recidivism and the efficacy of SBM to accomplish a reduction of recidivism.
 
 See
 

 id.
 

 at ----,
 
 817 S.E.2d at 27
 
 . Even if we assume for purposes of argument that sex offenders have a higher risk of recidivism than those convicted of other crimes, the State still must address whether SBM is actually effective to prevent recidivism for that defendant.
 

 At the hearing, the only evidence the State presented was "bills that the victim received for medical treatment, an order of evidence to destroy some evidence, two proposed form 615s for the registration and satellite-based monitoring, and two proposed permanent no-contact orders for the two victims."
 
 [1]
 
 As part of its argument, the State's counsel noted various studies and statistics:
 

 [T]here are some statistics I do want to recite for the Court so you can consider in your finding that this is reasonable search in this case. The United States Department of Justice, Office of Just Programs -- I'm referencing the office of sex offender sentencing, monitoring, apprehending, registering and tracking a research brief that was done by Louise DeBaca, D-e-B-a-c-a, he's a director, on July of 2015.
 

 The State then discussed various studies and statistics but did not provide the trial court or defense counsel with these studies, nor are they in the record on appeal.
 

 Much of the State's brief focuses on the portion of the hearing regarding Defendant's plea and its factual basis, but there is no issue regarding defendant's
 
 Alford
 
 plea or his convictions. After entry of the plea and sentencing, the trial court considered the State's petition for SBM and Defendant's motion to dismiss the petition. But the State presented no evidence as to the reasonableness of SBM. Instead, the State presented only argument opposing defendant's motion to dismiss and supporting its petition for SBM. In the argument, the State referred to various
 
 *48
 
 studies and statistics on recidivism by sex offenders, but the State did not attempt to present any evidence or request judicial notice of any studies
 
 regarding the actual efficacy of its SBM program in preventing recidivism.
 
 Even if we assume sex offenders in general do have a higher rate of recidivism than those convicted of other crimes, and even if a defendant in particular has an increased likelihood of reoffending, if there is no evidence that SBM actually prevents recidivism, the State cannot show that imposing a continuous, life-time search is reasonable under the Fourth Amendment of the United States Constitution.
 

 The State argues this case differs from
 
 Griffin
 
 because here the trial court took judicial notice of studies referenced by
 
 *908
 
 the State at trial. In
 
 Griffin
 
 , the State stresses that it did not present any evidence on the "efficacy of the SBM program."
 
 Griffin
 
 , --- N.C. App. at ----,
 
 818 S.E.2d at 340
 
 . In its brief, the State argues:
 

 Defendant also takes exception to the fact the State relied upon statistics from studies in its argument on the efficacy of SBM. However, at no point either during the hearing or in its memorandum did he object to the State's ability to raise those statistics. Instead, Defendant argued about the constitutionality of SBM on the basis of fees, the ability to travel, the burden of proof, and the ability to seek termination.
 

 However, on appeal, the basis for his argument about the statistics stems from this Court's decision in
 
 Griffin
 
 , namely that in relying upon a decision from the Fourth Circuit Court of Appeals, this Court reasoned, "Decisions from other jurisdictions relied upon by our dissenting colleague-and by the State-holding that SBM is generally regarded as effective in protecting the public from sex offenders are not persuasive;" and also the State did not attach the empirical or statistical reports to its memorandum. Understanding of course that this Court cannot overturn itself, it is therefore relevant that notwithstanding the lack of a bright-line test in
 
 Grady II
 
 , neither the State nor Defendant's trial court had the benefit of either
 
 Grady II
 
 or
 
 Griffin
 
 when addressing the reasonableness of SBM as it relates to Defendant.
 

 Even so,
 
 the State did not simply argue about other cases, it argued about actual studies. While the State did not appear to have introduced the physical research, seeing as the information about the studies came from
 

 *49
 

 a well-known source, the United States Department of Justice,
 
 the court was within its right to take judicial notice of the studies.
 
 See
 

 Khaja v. Husna
 
 ,
 
 243 N.C. App. 330
 
 , 353,
 
 777 S.E.2d 781
 
 , 794 (2015) (quoting N.C.G.S. § 8C-1, Rule 201 )(holding that a court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. ... A court may take judicial notice, whether requested or not.").
 

 (Emphasis added) (citations omitted.) Therefore, the State's argument relies upon the contention that the trial court took judicial notice of the studies and statistics noted in its argument to the trial court, despite the fact that (1) the studies were not presented to defendant or the trial court; (2) the State did not request judicial notice; and (3) the trial court made no indication it was taking judicial notice of the studies. The State also contends that Defendant waived any argument regarding judicial notice of the studies by his failure to object, but since the State did not present the studies to the trial court or request that the trial court take judicial notice of them, defendant had no opportunity to object to judicial notice.
 

 Judicial notice is governed by Rule 201 of the North Carolina Rules of Evidence :
 

 (b)
 
 Kinds of facts.
 
 - A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 

 (c)
 
 When discretionary.
 
 - A court may take judicial notice, whether requested or not.
 

 (d)
 
 When mandatory.
 
 - A court shall take judicial notice if requested by a party and supplied with the necessary information.
 

 (e)
 
 Opportunity to be heard.
 
 - In a trial court, a party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.
 

 N.C. Gen. Stat. § 8C-1, Rule 201.
 

 *50
 
 Defendant argues that the trial court could not take judicial notice under Rule 201 of the State's "purported studies" for several reasons. First, the State presented no evidence of the studies to the trial court. "[I]t is axiomatic that the arguments of counsel are not evidence."
 
 State v. Collins
 
 ,
 
 345 N.C. 170
 
 , 173,
 
 478 S.E.2d 191
 
 , 193 (1996). In addition,
 
 *909
 
 Defendant notes that the risk of recidivism by sex offenders is subject to extensive reasonable debate and this debate has been noted by our Court.
 

 As the State itself acknowledges, a court can only take judicial notice of a fact whose accuracy "cannot reasonably be questioned." State's Brief, p. 20 (quoting Rule 201 of the North Carolina Rules of Evidence ). Indeed, the State itself relies on
 
 Khaja v. Husna
 
 ,
 
 243 N.C. App. 330
 
 , 354,
 
 777 S.E.2d 781
 
 , 794 (2015), which makes clear that "[a]ny subject ... that is open to reasonable debate is not appropriate for judicial notice." Here, the results of the purported studies relied on by the State
 
 are subject to reasonable debate.
 

 As this Court has itself observed, there are multiple State and federal reports that counter the "widely held assumption that sex offenders recidivate at higher rates than other groups."
 
 State v. Grady
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 18
 
 , 27-28 (2018). For example, a study of the Bureau of Justice Statistics found that "state prisoners in general had almost a one in two chance of a new conviction ...." Chrysanthi Leon et al,
 
 Net-widening in Delaware
 
 :
 
 The Overuse of Registration and Residential Treatment for Youth Who Commit Sex Offenses
 
 ,
 
 17 Widener L. Rev. 127
 
 , 145 (2011). Of the released sex offenders, "the sex offense recidivism rate was only 5.3% over the three-year follow-up period."
 

 Id.
 

 Ultimately, because there is no consensus on recidivism rates among sex offenders, it is improper for the State to use judicial notice to establish such recidivism rates.
 

 (Alterations in original).
 

 This Court noted in
 
 Grady II
 
 that the defendant had "presented multiple reports authored by the State and federal governments rebutting the widely held assumption that sex offenders recidivate at higher rates than other groups." --- N.C. App. at ----,
 
 817 S.E.2d at 27-28
 
 . Our SBM statutes themselves also recognize that rates of recidivism vary for different classes of offenders and offenses, as the STATIC-99 evaluates the level
 
 *51
 
 of the risk of reoffending based upon the type of offense and characteristics of the particular defendant.
 
 See
 

 N.C. Gen. Stat. § 14-208
 
 .40A (2017).
 

 At trial, the State described statistics and studies to support its position that Defendant's risk of recidivism was higher because of his status as a sex offender.
 
 [2]
 
 But the studies were not presented to Defendant or the trial court, and there is no indication in our record or the transcript that the State requested or that the trial court actually took judicial notice. And as we have already noted, the studies the State relied upon were not included in the record on appeal.
 

 Defendant also argues that if the trial court could have taken judicial notice of the studies and statistics argued by the State, the State still presented no evidence of the efficacy of SBM. The statistics noted by the State addressed only the risk of recidivism, but this is just one part of the determination of the reasonableness of SBM. Defendant argues, and we agree, that the State presented no evidence on the second part of the analysis of the reasonableness of SBM-whether SBM is actually effective to prevent recidivism:
 

 Further, the studies recited by the prosecutor did not indicate that SBM would prevent Mr. Anthony himself from committing sex crimes upon his release from prison. As explained in
 
 Riley
 
 , it is insufficient for the State to merely assert its interest in a search. Any warrantless search must actually further the interest claimed. Here, the State failed to produce any evidence that SBM was a valuable law enforcement tool or that it had ever prevented the commission of a crime. It likewise did not put on any evidence that Mr. Anthony, who will be 68-years old when he is released from prison, actually will present a risk to public safety at that time.
 

 (Citation and emphasis omitted.)
 

 The State's attempt to distinguish this case from prior SBM cases where the State presented no evidence to support the reasonableness of SBM fails. The trial court did not take judicial notice of the studies mentioned
 
 *910
 
 by the State in argument, nor could it have taken judicial notice under Rule 201. The studies were not offered into evidence or even presented to defendant or the trial court but only discussed in argument. Even assuming arguendo that making an argument based upon a study
 
 *52
 
 or statistics to a trial court could enable judicial notice, statistics or studies on the effectiveness of SBM are neither "generally known within the territorial jurisdiction of the trial court" nor "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."
 

 Id.
 

 And again, the State presented no evidence regarding the
 
 efficacy
 
 of SBM.
 

 IV. Conclusion
 

 While defendant has facially challenged the constitutionality of North Carolina's SBM program, we decline to address this argument as the order requiring Defendant to submit to SBM was unreasonable as applied to him and must be reversed. Despite the State's attempt to distinguish this case from others where this Court has overturned SBM orders, we conclude that the statistics and studies mentioned by the State in its argument were not subject to judicial notice under Rule 201. In addition, the State presented no evidence on whether SBM is actually effective to prevent recidivism. Accordingly,
 

 [w]e also are bound by this Court's holding in
 
 Grady II
 
 that when the State has presented no evidence that could possibly support a finding necessary to impose SBM, the appropriate disposition is to reverse the trial court's order rather than to vacate and remand the matter for re-hearing.
 

 Griffin,
 
 --- N.C. App. at ----,
 
 818 S.E.2d at 342
 
 . The trial court's order imposing lifetime SBM is reversed.
 
 [3]
 
 As has been noted by other SBM cases, we emphasize that the State has preserved its arguments for review pending the outcome of the SBM cases with the Supreme Court of North Carolina.
 

 REVERSED.
 

 Judges HAMPSON and YOUNG concur.
 

 [1]
 

 The State presented this evidence during the portion of the hearing dealing with the plea and sentencing, but the trial court heard the SBM issues in the same hearing. The State did not present any additional evidence during the portion of the hearing regarding SBM.
 

 [2]
 

 During the hearing the State informed the trial court "I'll be reciting some of the statistics, but I don't have anything to present[,]" and the trial court responded, "Okay."
 

 [3]
 

 The parties disagree about the proper mandate given this Court's mandates in
 
 State v. Greene
 
 , --- N.C. App. ----,
 
 806 S.E.2d 343
 
 (2017) (reversing the SBM order), and
 
 State v. Gordon
 
 , --- N.C. App. ----,
 
 820 S.E.2d 339
 
 (2018) (vacating the SBM order), among other cases. Because "the State will have only one opportunity to prove that SBM is a reasonable search of the defendant[,]"
 
 Grady II
 
 , --- N.C. App. at ----,
 
 817 S.E.2d at 28
 
 , and, in this case, where the trial court held a hearing on SBM, considered the constitutionality of enrolling Defendant in SBM when the State referenced statistics and studies in support of its position, and denied Defendant's motion to dismiss, it is appropriate to reverse the trial court's order requiring Defendant to enroll in lifetime SBM.