IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-414

No. COA18-1118-3

Filed 21 June 2022

Rowan County, Nos. 17CRS51470, 17CRS51353, 17CRS51350, 17CRS51412, 17CRS974

STATE OF NORTH CAROLINA

v.

KENNETH RUSSELL ANTHONY, Defendant.

Appeal by defendant from order entered on or about 26 April 2018 by Judge Lori I. Hamilton in Superior Court, Rowan County. Heard in the Court of Appeals 8 May 2019, and opinion filed 20 August 2019. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019). Opinion filed 17 November 2020. Remanded to this Court by order of the North Carolina Supreme Court for further consideration in light of *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, *State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, and the General Assembly's recent amendments to the satellite-based monitoring program in 2021 North Carolina Laws S.L. 2021-138 (Sept. 2, 2021, eff. 1 December 2021).

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya M. Calloway-Durham, for the State.*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender David W. Andrews, for defendant.*

STROUD, Chief Judge.

¶ 1     Defendant Kenneth Russell Anthony appeals a trial court order directing him to enroll in satellite-based monitoring ("SBM") for life following his plea to an aggravated sex offense. We are reviewing Defendant's case for a third time; the North Carolina Supreme Court remanded the case to us to reconsider our holding in light of *State v. Hilton*, 378 N.C. 692, 2021-NCSC-115, *State v. Strudwick*, 379 N.C. 94, 2021-NCSC-127, and the General Assembly's recent amendments to the SBM program from Session Law 2021-138, § 18. 2021 North Carolina Laws S.L. 2021-138 (Sept. 2, 2021, eff. 1 December 2021). Based upon these recent Supreme Court rulings and the newly revised statutes applicable to this SBM order, we find the trial court conducted an adequate hearing as to the reasonableness of SBM in Defendant's case and thus we reject his argument the State failed to prove lifetime SBM was reasonable as applied to him. Because we further conclude SBM is reasonable as applied to Defendant after our own *de novo* review, we affirm.

## I.     Background

¶ 2     As this is the third time this case is before us, we draw on our previous opinions to give the factual background of the case, adding details only as necessary for this current opinion. Our first opinion summarized the underlying facts of the case:

> Defendant entered an *Alford* plea to attempted first-degree

sex offense, habitual felon, assault on a female, communicating threats, interfering with emergency communication, first-degree kidnapping, incest, and second-degree forcible rape. Defendant's charges were consolidated into a single judgment and the trial court imposed a sentence of 216 to 320 months. On the same day judgment was entered, Defendant submitted a motion to dismiss the State's petition for SBM. The trial court held a hearing regarding SBM. The trial court denied Defendant's motion and entered an order directing Defendant to submit to lifetime SBM upon his release from prison. Defendant timely appealed the order requiring him to submit to lifetime SBM.

*State v. Anthony*, 267 N.C. App. 45, 46, 831 S.E.2d 905, 906–07 (2019) ("*Anthony I*").

To expand upon that summary with the facts relevant to this appeal, the plea hearing included a summary of the evidence, to which Defendant had consented. Specifically, the trial court heard summarized evidence on a previous felony sex offense Defendant had committed, a previous sex offender registry violation, and the factual basis for the two charges to which Defendant pled in this case. The trial court later used the factual basis for these charges to conclude Defendant had committed an aggravated offense that made him eligible for SBM.

As *Anthony I* indicated, the trial court also held a hearing regarding SBM, and Defendant's motion to dismiss the State's petition for it, immediately after the plea hearing. 267 N.C. App. at 46, 831 S.E.2d at 906. Defendant argued in his motion to dismiss SBM was unconstitutional facially and as applied to him under the Fourth Amendment to the United States Constitution and Article I, § 20 of the North

Carolina Constitution. In the current appeal, Defendant only argues SBM violates the Fourth Amendment as applied to him.

As part of that argument, Defendant highlighted the Fourth Amendment requires searches to be reasonable and the United States Supreme Court in *Grady v. North Carolina*, 575 U.S. 306, 135 S. Ct. 1368 (2015) ("*Grady I*") (per curiam), held SBM is a search. Thus, the trial court conducted an analysis of reasonableness of SBM as to Defendant and found as follows:

> In this matter, the defendant is already, as a convicted sex offender, required to register as a sex offender. Those registration requirements already impose a burden upon the defendant and the -- the additional burden of satellite-based monitoring would be a slight additional burden or infringement on the defendant's life and liberty. That, in fact, the satellite-based monitoring does not actually curtail the defendant's liberty. It does not require that he be locked up or placed in any sort of detention facility, but rather makes his whereabouts known for the purposes of serving greater governmental interests and legitimate State interests such as protecting society from, in this particular case, a twice convicted sex offender and deterring the conduct of what is, in this case, a twice convicted sex offender.
>
> I will note also that studies show that sex offenders generally have a higher recidivism rate than does the general population of convicted felons, and for that reason -- for that reason and others, the State does have a legitimate State interest and a legitimate concern for the protection of society and the deterrence of future conduct. And for those reasons, I will -- that and the fact that I have now made findings of fact sufficient to justify the imposition of satellite-based monitoring will require that the defendant enroll in the satellite-based monitoring

program for a period of his natural life, unless monitoring
is earlier terminated pursuant to G.S. §14-208.43.

The trial court then denied Defendant's motion to dismiss the State's SBM petition and imposed SBM. As *Anthony I* noted, Defendant then "timely appealed the order requiring him to submit to lifetime SBM." 267 N.C. App. at 46, 831 S.E.2d at 907.

¶ 6 While we explain the nature of our prior rulings in our analysis below, we briefly review the procedural history of Defendant's appeal. Following our opinion reversing the SBM order in *Anthony I*, 267 N.C. App. at 52, 831 S.E.2d at 910, the North Carolina Supreme Court remanded "for reconsideration in light of" *State v. Grady*, 372 N.C. 509, 831 S.E.2d 542 (2019) ("*Grady III*"). *State v. Anthony*, No. COA18-1118-2, slip op. at 2, 274 N.C. App. 356 (2020) ("*Anthony II*") (unpublished), *remanded for reconsideration in* 379 N.C. 668, 865 S.E.2d 851 (2021). In *Anthony II*, we again reversed the trial court's order imposing lifetime SBM. *Id.*, slip op. at 6–7. Our Supreme Court remanded again for reconsideration in light of *Hilton*, *Strudwick*, and the legislative changes to the SBM program. 379 N.C. 668, 865 S.E.2d 851. Following the latest remand, we ordered supplemental briefing from each party. We now address Defendant's arguments from that briefing, which again challenges the trial court's order imposing lifetime SBM.

## II. Analysis

¶ 7 Defendant argues the trial court erred by imposing SBM because "[t]he State

failed to prove that SBM would be a reasonable search as applied to" him. Specifically, Defendant asserts that, just as our first opinion in this case determined, "the State 'presented no evidence as to the reasonableness of SBM,'" so "the order imposing SBM should be reversed." (Quoting *Anthony I*, 267 N.C. App. at 47, 831 S.E.2d at 907.) Defendant also contends the Supreme Court's recent decisions in *Hilton* and *Strudwick* do not impact his argument because they were facial challenges in contrast to his as-applied challenge.

¶ 8        We first address the standard of review. Then, to aid in the understanding of Defendant's arguments, we provide a brief overview of the recent history of SBM litigation and legislation as well as its impact on this case. Finally, we address his argument directly.

**A. Standard of Review**

¶ 9        We review a trial court order to determine "whether the trial judge's underlying findings of fact are supported by competent evidence, . . . and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Carter*, 2022-NCCOA-262, ¶ 14 (quoting *State v. Williams*, 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008)) (alteration in original). "We review a trial court's determination that SBM is reasonable *de novo*." *Id.* (citing *State v. Gambrell*, 265 N.C. App. 641, 642, 828 S.E.2d 749, 750 (2019)).

**B. Brief History of Recent SBM Litigation and Legislation**

With that standard of review in mind, we now provide a brief history of recent SBM litigation and how this case fits within that history. This Court's recent opinion in *Carter* provides a helpful overview of the history:

> The Supreme Court of the United States held in *Grady v. North Carolina*, 575 U.S. 306, 135 S. Ct. 1368, 191 L. Ed. 2d 459 (2015) ("*Grady I*"), that the imposition of SBM constitutes a warrantless search under the Fourth Amendment and necessitates an inquiry into reasonableness under the totality of the circumstances. 575 U.S. at 310, 135 S. Ct. at 1371, 191 L. Ed. 2d at 462.

*Carter*, ¶ 15. *Grady I* served as the basis for Defendant's motion to dismiss the State's SBM petition. And the trial court issued its SBM ruling with *Grady I* as the leading case on the matter.

We also issued our first opinion in this case, *Anthony I*, before the *Grady* case had reached the North Carolina Supreme Court again in *Grady III*. *See Anthony II*, slip op. at 2 (noting the Supreme Court remanded the case "for reconsideration in light of" *Grady III*). As Defendant highlights, we reversed the trial court order in *Anthony I* because "the State presented no evidence supporting the reasonableness of SBM as applied to Defendant." 267 N.C. App. at 46, 831 S.E.2d at 906. In *Anthony I*, we evaluated reasonableness by analyzing: "the defendant's risk of recidivism and the efficacy of SBM to accomplish a reduction of recidivism." *Id.*, 267 N.C. App. at 47, 831 S.E.2d at 907. Our lack-of-evidence holding focused on the second part of that

analysis, the State's failure to present any evidence on whether SBM effectively prevents recidivism. *Id.*, 267 N.C. App. at 52, 831 S.E.2d at 910. Notably, our ruling was based on *State v. Grady*, 259 N.C. App. 664, 817 S.E.2d 18 (2018) ("*Grady II*"). *See Anthony I*, 267 N.C. App. at 52, 831 S.E.2d at 910 (including language about being bound by *Grady II*).

¶ 12        *Grady III*, however, changed the way courts analyze reasonableness within the SBM context. Specifically, it replaced the two-pronged analysis used in *Anthony I* with a new set of three factors "to be considered in determining whether SBM is reasonable under the totality of the circumstances." *See Carter*, ¶ 17 (noting this Court used *Grady III* "for guidance as to the scope of the reasonableness analysis" required by *Grady I*). Under *Grady III*, courts had to weigh an offender's privacy interests, SBM's "'intrusion'" into those interests, and the State's "'without question legitimate' interest in monitoring sex offenders." *Id.* (quoting *Grady III*, 372 N.C. at 527, 534, 538, 543–44, 831 S.E.2d at 557, 561, 564, 568).

¶ 13        Thus, Defendant's emphasis on our previous determination in *Anthony I* that the State failed to present evidence supporting the reasonableness of SBM overlooks the difference in what reasonableness meant then versus now and thus what type of evidence the State needed to present. In *Anthony I*, we held that the State failed to provide evidence of SBM's efficacy. 267 N.C. App. at 52, 831 S.E.2d at 910. *Grady III* instead explained the State had to show SBM was reasonable under the totality

of the circumstances as measured by its three factors. *Carter*, ¶ 17 (citing *Grady III*, 372 N.C. at 527, 534, 538, 543–44, 831 S.E.2d at 557, 561, 564, 568). As explained more below, our Supreme Court's recent cases have made clear the State need not prove SBM's efficacy, only the three factors from *Grady III*. *See Hilton*, ¶ 28 ("Since we have recognized the efficacy of SBM in assisting with the apprehension of offenders and in deterring recidivism, there is no need for the State to prove SBM's efficacy on an individualized basis."); *Hilton*, ¶¶ 19, 29, 32 (laying out three factors for SBM reasonableness analysis that mirror those from *Grady III*). Thus, we reject Defendant's argument our holding on lack of evidence from *Anthony I* has any bearing on our analysis of his argument in this appeal.

¶ 14 Following *Grady III*, the Supreme Court remanded this case to us "for reconsideration in light of" *Grady III*, which led to our opinion in *Anthony II*. *Anthony II*, slip op. at 2. In *Anthony II*, we again determined the State could not establish SBM was reasonable; the State did not prove SBM would be a reasonable search in the distant future when Defendant was released from prison—18 years at the time of the opinion—which was the time when SBM would begin. *Anthony II*, slip op. at 6–7.

¶ 15 Since our decision in *Anthony II*, our Supreme Court has issued two further relevant decisions on SBM, *Hilton* and *Strudwick*. In *Hilton*, the Supreme Court "narrowly construed *Grady III*'s holding" noting *Grady III* "'left unanswered the

question of whether the SBM program is constitutional as applied to sex offenders who are in categories other than that of recidivists who are no longer under State supervision.'" *Carter*, ¶ 18 (quoting *Hilton*, ¶ 2). That includes people such as Defendant who falls under SBM's purview because he committed an aggravated offense. *See Hilton*, ¶ 21 (differentiating between the recidivist and aggravated offense categories in the SBM context). *Hilton* answered the question of the constitutionality of SBM for at least the aggravated offense category by laying out a three-step reasonableness inquiry under the totality of the circumstances, which resembles the inquiry from *Grady III*. *See Hilton*, ¶ 19 ("The first step of our reasonableness inquiry under the totality of the circumstances requires . . . ."). Specifically, courts must analyze: (1) "the legitimacy of the State's interest," (2) "the scope of the privacy interests involved," and (3) "the level of intrusion effected by the imposition of" SBM. *Hilton*, ¶¶ 19, 29, 32. *Hilton* concluded the SBM statute is not unconstitutional for the aggravated offender category because the SBM search is reasonable in that context. *Hilton*, ¶ 36.

*Strudwick* confirmed the three-step reasonableness inquiry. *See Strudwick*, ¶ 20 ("[W]e are bound to apply the instructions which we enunciated in *Grady III*—and further developed in *Hilton*—in order to determine the reasonableness of the trial court's imposition of lifetime SBM in defendant's case." (citing *Hilton*, ¶ 18)). In *Strudwick*, the Supreme Court again concluded lifetime SBM for the defendant was

reasonable because the "legitimate and compelling government interest" outweighed "its [SBM's] narrow, tailored intrusion into defendant's expectation of privacy in his person, home, vehicle, and location." *Id.*, ¶ 28.

*Strudwick* included two additional relevant discussions. First, the Supreme Court clarified the reasonableness determination takes place in the present, not the future:

> [T]he State is *not* tasked with the responsibility to demonstrate the reasonableness of a search at its effectuation in the future for which the State is bound to apply in the present; rather, the State *is* tasked under a legislative enactment presumed to be constitutional with the responsibility to demonstrate the reasonableness of a search at its evaluation in the present for which the State is bound to apply for the future effectuation of a search.

*Id.*, ¶ 13 (emphasis in original). *Strudwick* thus makes clear our decision in *Anthony II* cannot stand because it relied on the State's failure to prove reasonableness at the time Defendant will be released from prison. *Anthony II*, slip op. at 6–7.

The second relevant additional aspect of *Strudwick* is its discussion on how to reevaluate SBM orders as time moves forward and circumstances change. *Strudwick*, ¶¶ 15–17. *Strudwick* indicates a defendant could file a petition under Rule 60 of the North Carolina Rules of Civil Procedure on the grounds "it is no longer equitable that the judgment should have prospective application" or "[a]ny other reason justifying relief from the operation of the judgment." *Id.*, ¶ 16 (quoting N.C. Gen. Stat. § 1-1A,

Rule 60(b)(5)–(6) (2019)); *see also id.*, ¶ 17 (further explaining how sub-sections (5) and (6) could provide paths to relief). The Supreme Court also noted a defendant could file a petition under North Carolina General Statute § 14-208.43 (2019). *Strudwick*, ¶ 15.

¶ 19 *Strudwick*'s second option of statutory relief still exists, but subsequent statutory changes—the ones we are to consider on remand—have slightly altered the statute and process for defendants already ordered to enroll in SBM at the time of the changes.[1] The General Assembly rewrote § 14-208.43 to focus only on "offender[s] who [are] ordered on or after December 1, 2021, to enroll in satellite-based monitoring" and the means by which they can file a petition to terminate or modify SBM after five years of enrollment. N.C. Gen. Stat. § 14-208.43(a) (eff. 1 Dec. 2021); *see also* S.L. 2021-138 § 18(h) (showing changes made to § 14-208.43). For offenders ordered to enroll in SBM before that date, such as Defendant, the new § 14-208.46 allows them to file a petition to terminate or modify the monitoring. N.C. Gen. Stat. § 14-208.46(a) (2021); *see also* S.L. 2021-138 § 18(i) (showing creation of § 14-208.46).

---

[1] It is unclear why the Supreme Court mentioned only the old statute and not the statutory changes since the updated statute had already been signed into law by the time *Strudwick* was filed. *Compare Strudwick*, 2021-NCSC-127 (filed 29 October 2021) *with* 2021 North Carolina Laws S.L. 2021-138 (approval date of 2 September 2021). The old law also would not have applied to the defendant in *Strudwick* because it required at least a year of post-release SBM, *Strudwick*, ¶ 15, and the defendant would not be released within a year. *See id.* ¶¶ 3, 7 (explaining the defendant was sentenced to 30 to 43 years in prison in 2017).

If the offender files the petition before he has been enrolled for 10 years, then "the court shall order the petitioner to remain enrolled in the satellite-based monitoring program for a total of 10 years"; if the offender has been enrolled for at least 10 years already, "the court shall order the petitioner's requirement to enroll in the satellite-based monitoring program be terminated." N.C. Gen. Stat. § 14-208.46(d)–(e).[2] Combined with a change setting a ten-year maximum on new SBM enrollments, N.C. Gen. Stat. § 14-208.40A(c1), *see also* S.L. 2021-138 § 18(d) (showing changes made to

---

[2] The full language of (d) and (e) categorizes petitioners not enrolled "for at least 10 years" versus enrolled "for more than 10 years":
"(d) If the petitioner has not been enrolled in the satellite-based monitoring program for at least 10 years, the court shall order the petitioner to remain enrolled in the satellite-based monitoring program for a total of 10 years.
(e) If the petitioner has been enrolled in the satellite-based monitoring program for more than 10 years, the court shall order the petitioner's requirement to enroll in the satellite-based monitoring program be terminated."
N.C. Gen. Stat. § 14-208.46(d)–(e).

Given (d) indicates courts should only order petitioners to remain enrolled in SBM for 10 years, not more, it appears the General Assembly intended to define two categories of offenders: those not enrolled for at least 10 years and those enrolled for at least 10 years. *See State v. Alexander*, 2022-NCSC-26, ¶ 34 ("The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." (quotations and citation omitted)); *North Carolina Farm Bureau Mutual Insurance Company, Inc. v. Dana*, 379 N.C. 502, 2021-NCSC-161, ¶ 16 ("Legislative intent controls the meaning of a statute." (quotations and citation omitted)).

This Court's recent opinion in *Carter* also recognizes our view without further explanation of the wording in sub-section (e). *See Carter*, ¶ 22 (quoting sub-section (e) as part of a citation supporting the following sentence, "However, during the pendency of this appeal, our legislature amended the SBM statutes, in part, to create an avenue by which [d]efendant may petition a superior court to terminate his monitoring after ten years of enrollment.").

§ 14-208.40A), the statutory system now limits SBM to ten years for all offenders.[3]

As a final piece of our review of the recent history of SBM, we address Defendant's argument that *Hilton* and *Strudwick* do not constrain his overall argument because they both "primarily involved facial challenges" and he has an as-applied challenge. In *Grady III*, our Supreme Court explained the distinction between facial and as-applied challenges does not neatly apply to our SBM jurisprudence. *See* 372 N.C. at 546–47, 831 S.E.2d at 569–70 ("[T]he remedy we employ here is neither squarely facial nor as-applied." (citing *Citizens United v. FEC*, 558 U.S. 310, 331, 130 S. Ct. 876 (2010))). Specifically, in *Grady III*, the Supreme Court noted its ruling was as-applied in the sense that it did not apply to "all of the program's applications" given its limits to a specific category, but the ruling was facial "in that it is not limited to defendant's particular case." *Id.*

*Hilton* and *Strudwick* reflect the difficulty in separating facial from as-applied challenges in the SBM context. The *Hilton* court said it was addressing the constitutionality of the SBM program "as applied to defendants who fall outside" of *Grady III*, which both uses the as-applied language but was not limited to the

---

[3] *See* Jamie Markham, *Revisions to North Carolina's Satellite-Based Monitoring Law*, UNC School of Government Blog (Oct. 11, 2021), https://nccriminallaw.sog.unc.edu/revisions-to-north-carolinas-satellite-based-monitoring-law/ ("Former lifetime categories are changed to 10 years, and the abuse-of-a-minor category ('conditional' offenders) is capped at 10 years."); *see also id.* (explaining legislative changes in more detail).

particular defendant before the court. *Hilton*, ¶¶ 18, 36. Similarly, *Strudwick* involves language related to facial challenges when discussing the timing of the reasonableness determination, *Strudwick*, ¶ 14, and language about applying *Grady III* and *Hilton*'s reasonableness test "in order to determine the reasonableness of the trial court's imposition of lifetime SBM *in defendant's case*." *Id.*, ¶ 20 (emphasis added).

¶ 22     Thus, rather than trying to distinguish between facial and as-applied challenges, our courts' "practice is to examine searches effected by the SBM statute categorically." *Hilton*, ¶ 37 (citing *Grady III*, 372 N.C. at 522, 831 S.E.2d at 553). As this Court has recently clarified, trial courts must still conduct a Fourth Amendment reasonableness analysis, and we review that analysis *de novo*. *Carter*, ¶¶ 20–21. As part of the analysis, reviewing courts are bound by categorical determinations made by the Supreme Court. *See, e.g., id.* ¶ 27 (explaining because the defendant fit within a certain category, this Court "must follow the Supreme Court's holding in *Hilton* that he requires continuous lifetime SBM to protect public safety"). But if the defendant does not fit within one of the categorical determinations already made, a reviewing court's analysis is not constrained in the same way. *See id.*, ¶¶ 24–25 (determining the defendant did not fit into the categories in *Grady III* or *Hilton* so conducting its own analysis based upon the reasoning of those cases). Given this background, we need not determine precisely whether *Hilton* and *Strudwick* made

facial or as-applied rulings; we will follow the review framework set out in *Carter*.

**C. Reasonableness in this Case**

¶ 23    Having reviewed the recent legal changes and determined the impact on our prior opinions in this case, we now conduct the required review as laid out above. First, we evaluate whether the trial court properly considered if monitoring was constitutional under the Fourth Amendment. *Carter*, ¶¶ 20–21. Then we conduct our own *de novo* review of the trial court's determination. *Id.*

### 1. *Trial Court's Reasonableness Inquiry*

¶ 24    While *Hilton* proclaims "'the SBM statute as applied to aggravated offenders is not unconstitutional' because the 'search effected by the imposition of lifetime SBM on the category of aggravated offenders is reasonable under the Fourth Amendment,'" *Carter*, ¶ 18 (quoting *Hilton*, ¶ 36), "trial courts must continue to conduct reasonableness hearings before ordering SBM unless a defendant waives his or her right to a hearing or fails to object to SBM on this basis." *Id.*, ¶ 19 (citing *State v. Ricks*, 378 N.C. 737, 2021-NCSC-116, ¶ 10). Defendant preserved his objection on Fourth Amendment grounds via his motion to dismiss, which he also incorporated into his argument to the trial court at the SBM hearing.

¶ 25    Turning to *Carter* as an example of how to review a trial court's reasonableness hearing, this Court found the trial court "conducted a hearing regarding the facts and applicable law, and weighed the State's interests against [d]efendant's expectation of

privacy." *Id.*, ¶ 20. Specifically, the trial court heard testimony concerning: the statutory category authorizing SBM; the defendant's risk assessment; the failure of the defendant's previous sex offender registration to "deter his conduct or protect public safety"; and the defendant's prior sex offender registry violations. *Id.* Because the trial court weighed that against "the State's interest in protecting the public from a recidivist sex offender" and determined SBM was reasonable as applied to the defendant, this Court concluded the trial court's inquiry was appropriate. *Id.* While *Carter* involved a defendant required to enroll in SBM "solely because of his status as a recidivist" and thus focused on recidivism when evaluating the State's interest in public safety, *id.*, ¶¶ 20, 24, its explanation of the type of evidence a trial court should examine still aids our review here.

Here, the SBM hearing immediately followed Defendant entering his *Alford* plea and being sentenced. As part of the *Alford* plea, Defendant consented "to the Court hearing a summary of the evidence." The summary of the evidence included a previous felony sex offense, a sex offender registry violation, and the factual bases for the two charges to which Defendant pled. The summary of the evidence thus provided support for the trial court's Finding Defendant committed an aggravated offense under North Carolina General Statute § 14-208.6(1a) (eff. Dec. 1, 2017) because the second-degree forcible rape and incest conviction included a sexual act using "force or the threat of serious violence." *See* N.C. Gen. Stat. § 14-208.6(1a) (eff. Dec. 1, 2017)

(defining "aggravated offense" as a criminal offense that includes, *inter alia,*
"engaging in a sexual act involving vaginal, anal, or oral penetration with a victim of
any age through the use of force or the threat of serious violence"). The trial court
could also use the summary of the evidence to conduct its reasonableness assessment.

¶ 27    Turning to the reasonableness assessment, the trial court heard no additional
evidence during the SBM hearing, only argument from counsel. Although the trial
court did not have the benefit of any rulings past *Grady I*, it is still held to the latest
standard announced in *Hilton* and *Strudwick.* *See State v. Yancey*, 221 N.C. App.
397, 400 & n.1, 727 S.E.2d 382, 385–86 & n.1 (2012) (applying latest standard in
*Miranda* jurisprudence from a case coming after an order on appeal because "new
rules of criminal procedure must be applied retroactively 'to all cases, state or federal,
pending on direct review or not yet final'" (quoting *State v. Zuniga*, 336 N.C. 508, 511,
444 S.E.2d 443, 445 (1994) (in turn quoting *Griffith v. Kentucky*, 479 U.S. 314, 328,
107 S. Ct. 708, 716 (1987)))). Thus, the trial court had to balance: the State's interest;
Defendant's privacy interest; and the "level of intrusion effected by the imposition of"
SBM. *Hilton*, ¶¶ 19, 29, 32.

¶ 28    The trial court's entire reasonableness analysis was:

> In this matter, the defendant is already, as a
> convicted sex offender, required to register as a sex
> offender. Those registration requirements already impose
> a burden upon the defendant and the -- the additional
> burden of satellite-based monitoring would be a slight

additional burden or infringement on the defendant's life and liberty. That, in fact, the satellite-based monitoring does not actually curtail the defendant's liberty. It does not require that he be locked up or placed in any sort of detention facility, but rather makes his whereabouts known for the purposes of serving greater governmental interests and legitimate State interests such as protecting society from, in this particular case, a twice convicted sex offender and deterring the conduct of what is, in this case, a twice convicted sex offender.

I will note also that studies show that sex offenders generally have a higher recidivism rate than does the general population of convicted felons, and for that reason -- for that reason and others, the State does have a legitimate State interest and a legitimate concern for the protection of society and the deterrence of future conduct. And for those reasons, I will -- that and the fact that I have now made findings of fact sufficient to justify the imposition of satellite-based monitoring will require that the defendant enroll in the satellite-based monitoring program for a period of his natural life, unless monitoring is earlier terminated pursuant to G.S. §14-208.43.

¶ 29 The trial court conducted the required reasonableness analysis. At the start, the trial court noted Defendant's status as a registered sex offender imposes burdens, and that discussion addresses his privacy interest. The trial court then discussed "the additional burden of satellite-based monitoring," which addresses the level of intrusion from imposing SBM. Finally, the trial court recounted the State's interest in imposing SBM. Thus, the trial court addressed the three factors it had to balance as part of its reasonableness assessment. *See Hilton*, ¶¶ 19, 29, 32 (recounting the factors).

¶ 30   A comparison to our review in *Carter* also reveals the adequacy of the trial court's reasonableness analysis. As in *Carter,* ¶ 20, the trial court here heard evidence about the statutory category authorizing SBM, namely that Defendant had committed an aggravated offense. The trial court also heard evidence, as in *Carter, id.*, about Defendant's previous sex offender registration, which apparently failed to deter his conduct in the instant offenses, as well as evidence he had previously committed sex offender registry violations.

¶ 31   The only difference between the evidence before the trial court in *Carter* and in this case is the lack of information in the record about a risk assessment of Defendant. *See id.* (listing risk assessment as part of evidence before trial court). But that difference does not change our determination the trial court conducted an adequate reasonableness hearing. The statute concerning court-imposed SBM in effect at the time of Defendant's hearing did not require the trial court to order a risk assessment if an offender had committed an aggravated offense, as Defendant did. *See* N.C. Gen. Stat. § 14-208.40A(c) (eff. Dec. 1, 2017) (requiring court to order offender who has committed an aggravated offense to enroll in lifetime SBM with no mention of a risk assessment).[4] Further, the risk assessment at most could have

---

[4] Under the version of § 14-208.40A in effect at the time of Defendant's trial, if the offender did not commit an aggravated offense or fit into one of the other categories in (c), sub-section (d) required the trial court to order a risk assessment if the offender committed an offense

further justified the State's interest in SBM. But the State already had significant other evidence supporting its interest such as the previous sex offender registration failing to deter the instant offense and the previous sex offender registry violations. As a result, the lack of evidence of a risk assessment of Defendant does not persuade us the outcome here should differ from *Carter*.[5]

¶ 32 We therefore conclude the trial court held an adequate reasonableness hearing as required. *See Carter*, ¶ 19 (explaining trial courts must continue to conduct hearings on the reasonableness of SBM). Further the trial court made adequate findings to support its conclusion SBM was reasonable as applied to Defendant.

### 2. *De Novo Review of Reasonableness Determination*

¶ 33 Since we have determined the trial court conducted an adequate reasonableness analysis, we now review *de novo* its determination SBM is reasonable as applied to Defendant. *Carter*, ¶ 21. As part of our *de novo* review, we must

---

involving a minor. N.C. Gen. Stat. § 14-208.40A(d) (eff. Dec. 1, 2017). Further, the current version of § 14-208.40A(c) requires the trial court to order a risk assessment of offenders who have committed an aggravated offense. N.C. Gen. Stat. § 14-208.40A(c) (eff. Dec. 1, 2021).

[5] Defendant also later brings up the lack of risk assessment when arguing we should remand for the trial court to conduct a risk assessment because the current version of §14-208.40A(c) requires such assessment for all people subject to SBM. However, when making that change, the General Assembly made clear it would only apply to SBM determinations "on or after" 1 December 2021. *See* S.L. 2021-138 § 18(d) (adding risk assessment provisions to § 14-208.40A(c) as laid out above and in Footnote 4); *id.* § 18(p) (explaining all subsections of § 18 in the session law "appl[y] to [SBM] determinations on or after" 1 December 2021 with the exception of (b), (i), and (o)). Defendant's SBM determination took place on or about 26 April 2018, so the General Assembly clearly did not intend for him to benefit from the changes in the statute. Therefore, we reject Defendant's argument.

evaluate the reasonableness of SBM under the totality of the circumstances considering: (1) the legitimacy of the State's interest; (2) the scope of Defendant's privacy interests; and (3) the intrusion imposed by SBM. *Hilton*, ¶¶ 19, 29, 32.

### a. *Legitimacy of the State's Interest*

We start by considering the State's interest in monitoring Defendant. *Hilton* and *Strudwick* both recognized the dual interests served by SBM imposed on aggravated offenders in "preventing and prosecuting future crimes committed by sex offenders." *Strudwick*, ¶ 26; *see also Hilton*, ¶ 25 ("assisting law enforcement agencies in solving crimes") and ¶ 27 ("protecting the public from aggravated offenders by deterring recidivism"). Our courts have long recognized these dual interests are "both legitimate and compelling," *Strudwick*, ¶ 26, particularly for aggravated offenses. *See Hilton*, ¶ 21 ("[T]he State's interest in protecting the public from aggravated offenders is paramount."). As the Supreme Court made clear in *Hilton*, "after our decision in *Grady III*, the three categories of offenders who require continuous lifetime SBM to protect public safety are (1) sexually violent predators, (2) aggravated offenders, and (3) adults convicted of statutory rape or a sex offense with a victim under the age of thirteen (adult-child offenders)." *Id.*, ¶ 23 (footnote omitted).

Here, Defendant committed an aggravated offense under N.C. Gen. Stat. § 14-208.6(1a) (eff. Dec. 1, 2017) because the second-degree forcible rape and incest conviction included a sexual act using "force or the threat of serious violence." So

under *Hilton*, Defendant requires continuous lifetime SBM to protect public safety. *Hilton*, ¶¶ 21, 23.

¶ 36        Defendant argues his case is distinguishable from *Strudwick* because his offenses "were committed against two known victims in his home" who "identified him to investigators" rather than against a stranger in a public space. He asserts that, as a result, the State's interests in using SBM to solve crimes and for deterrence "are lessened" in his case because SBM would not solve or prevent his crimes.

¶ 37        We reject Defendant's attempt to distinguish from our binding precedent. First, this argument ignores *Hilton*, on which *Strudwick* relied when articulating the State's interest. *Strudwick*, ¶ 26. In *Hilton*, SBM was imposed in a case where the victim in the case was also a victim in a case in which that defendant was previously convicted. *Hilton*, ¶ 6. That situation resembles the situation in Defendant's argument here, as Defendant contends a victim who knows a perpetrator could identify him to investigators, as opposed to a victim who is a "stranger . . . in a public space."

¶ 38        Further, on a broader level, Defendant misconstrues the nature of the State's interest. Defendant assumes the State's interest is in preventing or prosecuting the crime which triggered SBM (or a repeat of the same scenario), but the State's interest is broader. It encompasses all potential future sex crimes. *See, e.g., Hilton*, ¶ 21 (defining interest as "protecting children and others from sexual attacks" without

limitation) (quotations, citation, and alterations omitted). Thus, as long as SBM could prevent or solve a future sex crime, regardless of the exact facts of that scenario, the State's interest is served. Since our Supreme Court has concluded that is true for aggravated offenders like Defendant, we conclude the State has a legitimate interest here.

### b. *Scope of Defendant's Privacy Interest and Intrusion Imposed by SBM*

¶ 39 Next we consider the scope of Defendant's privacy interest and the intrusion upon that interest caused by SBM. *Hilton* concluded an aggravated offender, such as Defendant, "has a diminished expectation of privacy both during and after any period of post-release supervision" because of the "numerous lifetime restrictions that society imposes upon him," especially via the sex offender registration requirements. *Hilton*, ¶¶ 36, 31.

¶ 40 *Hilton* and *Strudwick* also explain the intrusion imposed by SBM. *Hilton* determined "the imposition of lifetime SBM causes only a limited intrusion into that diminished privacy expectation." *Hilton*, ¶ 36. Specifically, *Hilton* noted SBM is less invasive than criminal sanctions or civil commitment. *Id.*, ¶¶ 33, 35. The *Hilton* court also highlighted the similarities of SBM to sex offender registration and the ability of a defendant to petition to be removed from SBM via the mechanism we discussed above. *Id.*, ¶ 34. Relying on these portions of *Hilton*, *Strudwick* likewise concluded "the imposition of lifetime SBM . . . constitutes a pervasive but tempered

intrusion upon . . . Fourth Amendment interests." *Strudwick*, ¶ 25 (citing *Hilton*, ¶ 35).

¶ 41        Defendant argues we should not reach the same conclusion as *Hilton* and *Strudwick* on the intrusion into his privacy interests caused by SBM because they failed to consider "two significant privacy interests that are not diminished following post-release supervision." Specifically, he argues our Supreme Court's previous decisions failed to consider SBM "will involve a search of [his] house" and "of the whole of [his] movements for the rest of his life."

¶ 42        We reject Defendant's arguments because *Hilton* and *Strudwick* considered those privacy interests and the intrusions thereupon caused by SBM. As a general note, *Hilton* specifically concluded aggravated offenders have a diminished expectation of privacy *"after any period of post-release supervision."* *Hilton*, ¶ 36 (emphasis added).

¶ 43        As to the search into Defendant's home, *Strudwick* incudes an explanation of how *Grady III* determined *State v. Bowditch*, 364 N.C. 335, 700 S.E.2d 1 (2010), "sufficiently incorporate[d] . . . the invasion of a defendant's home" into an evaluation of offenders' expectations of privacy and the impact of SBM thereupon. *Strudwick*, ¶ 22 (citing *Grady III*, 372 N.C. at 532, 831 S.E.2d 542). While the *Strudwick* court noted *Grady III*'s discussions of *Bowditch*'s limitations, it ultimately still relied on *Bowditch* for the idea "that it is constitutionally permissible for the State to treat a

sex offender differently than a member of the general population" because of their sex offense conviction. *Strudwick*, ¶ 22 (citing *Hilton*, ¶ 30). Given *Strudwick*'s reliance on *Bowditch* and its emphasis on how *Bowditch* covered a search of offenders' homes, our Supreme Court has considered SBM effecting a search of the home and found those concerns did not justify finding SBM searches unreasonable for aggravated offenders. If that was not clear enough, *Strudwick* also explicitly said SBM was reasonable given the government interest outweighed SBM's intrusion "into defendant's expectation of privacy in his person, *home*, vehicle, and location. *Strudwick*, ¶ 28 (emphasis added). As a result, we reject Defendant's argument on the search of his house.

¶ 44        *Hilton* and *Strudwick* also considered the search of Defendant's movements for the rest of his life; they scarcely could have avoided it considering such monitoring is inherent in SBM. *See Hilton*, ¶ 35 (minimizing intrusion of "SBM's collection of information regarding physical location and movements"). *Strudwick* also specifically found SBM reasonable even when considering its intrusion into a defendant's "expectation of privacy in his . . . location." *Strudwick*, ¶ 28. *Hilton* emphasized once an offender is unsupervised, "no one regularly monitors the defendant's location, significantly lessening the degree of intrusion." *Hilton*, ¶ 35. Building on that, *Strudwick* recognized using the data tracking offenders' movements for anything other than the State's permissible purpose of preventing and solving

crimes "would present an impermissible extension of the scope of the authorized search" that could change the calculus. *See Strudwick*, ¶ 23 (citing *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S. Ct. 1868 (1968)) (explaining the State has an "ongoing" burden to establish the reasonableness of the search as a result of the possibility of an impermissible extension of the scope of the search). As a result, our Supreme Court has already weighed the search of all an offender's movements for the rest of his life and determined that adequate protections are in place. We therefore reject Defendant's argument *Hilton* and *Strudwick* failed to address the matter.

### c. *Reasonableness under the Totality of the Circumstances*

Examining the reasonableness of SBM under the totality of the circumstances, we weigh the State's legitimate interest in "preventing and prosecuting future crimes committed by sex offenders," *Strudwick*, ¶ 26, against Defendant's "diminished expectation of privacy both during and after any period of post-release supervision," *Hilton*, ¶ 36, and the "limited intrusion" caused by lifetime SBM for aggravated offenders. *Id.* Given *Hilton* and *Strudwick* balanced these factors for aggravated offenders like Defendant, *Hilton*, ¶¶ 36–37, *Strudwick*, ¶ 28, and we have rejected Defendant's arguments trying to differentiate his case from those cases, we conclude after *de novo* review that SBM is reasonable in Defendant's case.

## III.  Conclusion

We reject Defendant's argument the State failed to present sufficient evidence

to the trial court for it to make a determination of the reasonableness of SBM. Following our *de novo* review, we also conclude SBM is reasonable in Defendant's case. Therefore, we affirm the trial court's order imposing lifetime SBM on Defendant. Defendant can, however, petition to terminate or modify the SBM with the superior court in Rowan County, which would be required to terminate the monitoring after 10 years enrolled, under the terms of § 14-208.46.

AFFIRMED.

Judge CARPENTER concurs.

Judge HAMPSON concurs in result only.